**UNITED STATES of America ex rel. James KIMBROUGH**

v.

**Alfred T. RUNDLE, Superintendent.**

Misc. No. 3788.

United States District Court
E. D. Pennsylvania.

Dec. 2, 1968.

John Rogers Carroll, Philadelphia, Pa., for petitioner.

Vram Nedurian, Newtown Square, Pa., for respondent.

## MEMORANDUM AND ORDER

MASTERSON, District Judge.

On March 25, 1957, the Court of Quarter Sessions of Delaware County, Pennsylvania, sentenced the relator, James Kimbrough, to a term of five to fifteen years imprisonment at the State Correctional Institution at Graterford, Pennsylvania. In 1968, almost eleven years after his conviction, the relator petitioned this Court pursuant to Title 28 U.S.C. § 1915 for leave to proceed in forma pauperis for the purpose of seeking a writ of habeas corpus under Title 28 U.S.C. § 2241 et seq. On January 24, 1968, this Court granted the relator leave to proceed in forma pauperis. For reasons discussed below the relator's petition for a writ of habeas corpus is granted.

The relator was indicted for the offenses resulting in his current imprisonment on December 7, 1956, by Bill of Indictment Number 480, of the March Sessions, 1957, of the Court of Quarter Sessions, Delaware County, charging him with one count of burglary and larceny in violation of the Act of 1939, June 24, P.L. 872, § 901, 18 P.S. § 4901. Although the record does not contain any other original bill of indictment, the transcript of the relator's trial indicates that in December, 1956, he was indicted in Bill of Indictment Number 479, for Obstructing an Officer in the Execution of Process in violation of the Act of 1939, June 24, P.L. 872, § 314, as amended by the Act of 1943, May 21, P.L. 306, § 1, 18 P.S. § 4314.

Some time between December, 1956, and March, 1957, the relator was arrested under circumstances which have never been clarified aside from the reference at his trial to the effect that he " * * * was apprehended at his home by the Philadelphia police." (Trial Transcript, N.T. p. 6). The relator was arraigned on March 6, 1957, and pleaded not guilty to both charges. He was not represented by counsel at the arraignment, but evidence presented at the hearing conducted on the present habeas corpus petition suggests that the Judge presiding at the arraignment told him to " * * * get his own lawyer." (Habeas Transcript, N.T. p. 10). He did not retain counsel between the arraignment and the date of his trial.

On March 25, 1957, the relator was brought to trial before the Court of Quarter Sessions of Delaware County, Pennsylvania. A jury was sworn and, immediately thereafter, the Assistant District Attorney of Delaware County commenced his opening statement. Although the relator evidently had appeared for trial that morning without counsel, some time during the morning the court had appointed an attorney from the Voluntary Defenders Office to represent him. It is not clear precisely when counsel was appointed, but it is certain that he was not appointed prior to the day of trial, and it is likely that he was appointed initially after the selection

of the jury and only immediately prior to the prosecutor's opening statement. (Habeas Transcript, N.T. pp. 13–16).

During the prosecutor's opening statement defense counsel conferred with him and then both attorneys conferred with the Judge. After this side-bar conference the prosecutor informed the Judge in open court that the defendant wished to change his plea to a plea of guilty. The Commonwealth then called as its only witness Officer Charles F. Reaps of the Police Department of Springfield Township, Delaware County, to testify to the circumstances of the offenses.

Officer Reaps testified that he had apprehended the relator early on the morning of December 7, 1956, while he was walking along a highway " * * * in a suspicious manner". (Transcript of Trial, N.T. p. 3). The officer questioned the relator about his presence at this location and, after having received unsatisfactory responses, he decided to place him under arrest. The relator resisted the arrest, however, struck Officer Reaps on the head with a radio allegedly stolen during the course of the burglary, and fled.[1]

The relator's court-appointed counsel did not cross-examine Officer Reaps. He left unexplained the circumstances of the relator's arrest in Philadelphia, and the circumstances of the search which had produced the radio which was introduced as evidence at trial. Counsel did not produce any evidence on the relator's behalf. As far as the trial transcript indicates,

counsel took no part in the sentencing proceedings except to ask the relator, "Is there anything you want to say to the Judge?" (Trial Transcript, N.T. p. 8).

After satisfying himself that the relator's plea of guilty was voluntarily made, the Judge sentenced him to a term of five to fifteen years imprisonment on Bill of Indictment No. 480, and suspended sentence on Bill of Indictment No. 479. The relator did not appeal his conviction, but instead commenced serving the sentence which he challenges here.[2]

In 1967 the relator filed a petition for post-conviction relief with the state trial court. In his petition he alleged that he had been deprived of the effective assistance of counsel, that his plea of guilty was unlawfully induced, and that he had been denied his right to appeal. By an opinion and order dated July 6, 1967, the state court denied his petition without a hearing. This Order was affirmed by the Superior Court of Pennsylvania in a per curiam Order without opinion dated October 27, 1967. On December 11, 1967, his petition for allowance of appeal from the Judgment of the Superior Court was denied per curiam by the Supreme Court of Pennsylvania. It is not disputed that the relator has satisfactorily exhausted all available state post-conviction remedies pursuant to Title 28 U.S.C. § 2254(b) and (c).

In his petition the relator has advanced the same contentions which the state courts considered and rejected.

---

1. Reaps testified also that a restaurant near the location where he had apprehended the relator had been burglarized earlier that morning and that the burglar had stolen a radio and $49.70 in change. (Trial Transcript, N.T. pp. 5, 6). Because of the entry of the guilty plea the trial judge felt that it was unnecessary for the owner of the restaurant to testify.

2. The relator was granted parole on August 10, 1962, but approximately two years later, on September 17, 1964, he was returned to prison as a convicted parole violator. The circumstances of that conviction were the basis of another conviction, by the Court of Quarter Sessions of Philadelphia, Pennsylvania, on

one count of Burglary, Larceny, and Receiving Stolen Goods, for which the relator received a one to three year sentence to commence at the termination of the sentence challenged here. During the pendency of his current petition, the relator qualified for parole on the Delaware County sentence for the limited purpose of re-entry on the sentence arising from his Philadelphia conviction. The District Attorney of Delaware County agreed that the formal termination of the Delaware County sentence does not moot this current petition. See, Carafas v. La Vallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (Opinion, Fortas, J., May 20, 1968.)

After filing his petition, however, his counsel, John Rogers Carroll, Esquire, pressed the single contention that he had been deprived the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. Evidence in support of this contention was adduced at the hearing before this Court conducted on June 18, 1968. The relevant evidence presented at this hearing clearly supports the relator's contention that he was tried without the effective assistance of counsel.

In challenging the adequacy of his court-appointed counsel's presentation of his case the relator relies almost exclusively upon the fact that counsel was appointed immediately prior to the beginning of trial. The relator contends that such late appointment establishes that his trial was inherently prejudicial. He contends that a showing of such late appointment, without more, establishes a prima facie case of prejudice shifting the burden of proof to the state to rebut the presumption of prejudice. See, Fields v. Peyton, 375 F.2d 624, 627 (C.A.4, 1967), United States ex rel. Mathis v. Rundle, 394 F.2d 748, 753 (C.A.3, 1968), and United States ex rel. Huntt v. Russell, 285 F.Supp. 765, 767–768 (E.D.Pa., 1968). Finally, he urges that a prima facie case may be overcome only when there is " * * * adequate affirmative evidence that the petitioner was not prejudiced by the lack of time * * * ", Jones v. Peyton, 288 F.Supp. 129, 131 (W.D.Va., 1968).

It is clear that the relator's case is one in which the appointment of counsel was made at such a late time that under the *Huntt* and *Mathis* cases a presumption of prejudice arises. In fact, unlike both of those cases in which counsel was appointed prior to the day of trial, counsel here was appointed immediately before trial and hence was unable to make any pre-trial investigation of the case. There was no Voluntary Defender's file on the relator's case, but, even if there had been one, defense counsel's late appointment would not have allowed him

the time to examine it carefully. It also appears likely that defense counsel had at most one hurried conference with his client which was entirely inadequate to determine what factual and/or legal defenses might have been available to the relator.

As a result of this lack of opportunity for consultation and investigation defense-counsel's participation at trial was necessarily perfunctory. He conferred once with the prosecutor, he participated in a side-bar conference, and he made two comments on the record. The superficial nature of defense counsel's participation at the trial is particularly significant in view of the fact that his client was indicted for two serious crimes involving possible aggregate sentences of twenty-one years.

At the June 28th hearing the Commonwealth cross-examined the Voluntary Defender in an attempt to establish that this late appointment had not been prejudicial. The Commonwealth established only that the records, which the Voluntary Defender used to refresh his recollection for the purpose of testifying here, did not indicate either that the relator had told defense-counsel about alibi witnesses or that the relator had informed him of any facts which might have indicated the necessity of requesting a continuance. This evidence was of little probative value since, at best, counsel conferred with his client in the courtroom in a hurried atmosphere hardly conducive to meaningful attorney-client consultation. Certainly the evidence which the Commonwealth produced does not constitute the " * * * affirmative evidence * * * " which *Fields*, supra, held to be necessary to rebut the presumption of prejudice. See also, Turner v. State of Maryland, 318 F.2d 852, 854 (C.A.4, 1963) (the evidence must be " * * * clear proof that no prejudice resulted * * * ")

The Commonwealth has argued, however, that the relator waived his right to be represented by counsel by his failure to retain counsel between the time of his arraignment and the date of trial. It

contends also that the entering of the guilty plea forecloses any inquiry into proceedings occurring prior to that time. Finally, assuming arguendo that the relator did not waive his right to counsel and that entry of the guilty plea does not bar consideration of his substantive claims, the Commonwealth argues that the relator has not demonstrated that the late appointment of counsel prejudiced him. In support of this contention it argues that it is unfair to apply the *Mathis* presumption of prejudice in this case where the relator refused to testify at the habeas corpus hearing and where there has been no suggestion that at the time of trial there were either alibi witnesses who could have been called on the relator's behalf or defenses which could have been advanced.

█ The Commonwealth has not pursued its contention of waiver further than suggesting that the relator is estopped from challenging the effectiveness of his court-appointed counsel because of his failure to retain his own counsel after the Judge presiding at his arraignment allegedly advised him to do so. Assuming that the relator was advised to retain his own counsel, his failure to do so ought not prevent him from challenging the effectiveness of counsel appointed on the day of trial by the trial judge. But this question need not be resolved, for, at the hearing conducted here, the Commonwealth did not prove that the relator had been advised to retain counsel at the time of his arraignment.

█ A guilty plea does not foreclose a defendant from questioning all of the proceedings which occurred before the entry of the plea. See, e. g. Commonwealth ex rel. Foeman v. Maroney, 420 Pa. 486, 489, 218 A.2d 230 (1966). For example, the entry of a guilty plea does not prevent a defendant from challenging his conviction on the basis that he lacked counsel at the time of the plea. See, *Foeman*, supra, 420 Pa. at 489, 218 A.2d 230. In this case the relator's contention that counsel was ineffective amounts to a contention that he lacked counsel.

█ The significant premise underlying those decisions which have held that late appointment of counsel is inherently prejudicial to a defendant's rights to a fair trial, is that last-minute appointment of counsel is functionally equivalent to the absence of counsel. Once such last-minute appointment has been shown it is presumed, unless there is proof to the contrary, that the defendant was prejudiced. See, e. g. Martin v. Commonwealth of Virginia, 365 F.2d 549 (C.A.4, 1966). Indeed, one of the principal vices arising from last-minute appointment of counsel is that counsel's lack of familiarity with the details of his client's case makes it impossible for him to exercise an enlightened judgment as to the threshold question of how his client should plead. As stated by the Court in Fields v. Peyton, 375 F.2d 624, 628 (C.A.4, 1967):

"Courts are required to allow counsel sufficient time to inform themselves fully, to reflect maturely and to prepare thoroughly in the cases to which they are assigned, and courts can no longer tolerate perfunctory performance by appointed lawyers of the duty owed to indigent defendants".

Accordingly, it would be improper to bar the relator's challenge of defense-counsel's representation because of the entry of the guilty plea. See, e. g. Bentley v. State of Florida, 285 F.Supp. 494, 497–498 (S.D.Fla., 1968).

Although late appointment of defense counsel is alone enough to create a prima facie case of prejudice there are other factors in the record which suggest that the relator's rights to a fair trial may have been violated because of his counsel's lack of opportunity to investigate and prepare a defense. For example, there were two potential avenues of inquiry, i. e. the circumstances surrounding the relator's arrest in Philadelphia and the circumstances of the search which produced the radio, which might have been explored had counsel been

appointed reasonably in advance of trial. If counsel had had an adequate opportunity to look into these matters he may well have advised his client to plead not guilty.

To go further and require the relator to show that the result at his trial necessarily would have been different if counsel had had an adequate opportunity to investigate the case would result in requiring the relator to establish by his own efforts those things for which the law recognized he needed the assistance of counsel in the first place. *Martin,* supra, 365 F.2d at p. 551.

Accordingly, it is hereby ordered that the relator's petition for a writ of habeas corpus is granted.

It is further ordered that the execution of the writ is stayed for a period of thirty (30) days within which the Commonwealth may re-try the relator or appeal. In the event the Commonwealth does appeal any further stay must be sought in the Court of Appeals. In the event the Commonwealth does not appeal but decides to re-try the relator it may petition this Court for a further reasonable stay of the execution of the writ.

