UNITED STATES of America ex rel. Samuel CONYERS

v.

Alfred T. RUNDLE, Superintendent.

Misc. No. 69–54.

United States District Court
E. D. Pennsylvania.

June 12, 1969.

Patrick J. O'Connor, Philadelphia, Pa., for petitioner.

### OPINION

JOHN MORGAN DAVIS, District Judge.

Before the Court is a petition for a Writ of Habeas Corpus. On April 15, 1963, the relator received a sentence of 6 to 12 years imprisonment, after a trial by jury, for the crimes of statutory rape and sodomy. In September 1966, he filed a Post Conviction Petition; however, a stipulation of counsel was approved by the trial Court wherein he was given leave to file post trial motions *nunc pro tunc*. The motions were denied in December 1967. On appeal, the judgment of sentence was affirmed, per curiam. Commonwealth v. Conyers, 213 Pa.Super. 708, 244 A.2d 168 (1968). State remedies have been exhausted.

It is apparent that the sole issue being asserted here—ineffective assistance of counsel—was raised in this precise form for the first time on appeal to the Superior Court. To assure that the relator and the Commonwealth would have full opportunity to develop their respective positions, a hearing was conducted in this Court, on May 15, 1969. At this hearing, the Commonwealth surprisingly waived participation and elected to rely upon their memorandum of law. Recognizing that under the recent decision of U. S. ex rel. Mathis v. Rundle, 394 F.2d 748 (3rd Cir., 1968) the burden of proof in belated appointment of counsel cases falls upon the state, I granted the Commonwealth one week to either place an order for the habeas notes of testimony, and submit a response memorandum, or to request a rehearing. On May 28, 1969, the District Attorney of Northampton County, indicated that his office would not pursue the matter further.

Preliminarily, we conclude that the relator has sustained his burden of demonstrating that defense counsel were appointed on the eve of trial. At the habeas hearing, relator's principal defense counsel testified that he was appointed on the morning of trial. He first spoke to his client for about one hour, where the principal topic of conversation was the composition of the jury array, since the relator was concerned that an all white jury would substantially impair his chances for an impartial trial. In any event, the principal defense counsel admitted that when he was appointed that morning, he was given only the bill of indictment and the notes of testimony of the preliminary hearing in magistrate's court.

In a similar manner, relator's junior co-counsel testified that he was appointed, "after lunch,—1:30 or 2:00 P.M." on the day of trial. That first afternoon the jury was selected, and opening speeches may have been made, (although counsel were not sure on this

point). In *Mathis*, supra, at p. 753, this Circuit set forth the rule that:

> Should the trial court fail to appoint counsel sufficiently in advance of trial to prepare defendant's case in a reasonably thorough manner, and should defendant on collateral attack establish a prima facie case that the hasty appointment of legal assistance may have been inherently prejudical to his trial by precluding him from the advantage of an adequently prepared defense, then * * * the state should bear the brunt of rebutting the presumption of injury * * *.

There is no doubt that counsel did not have time to prepare the case "in a reasonably thorough manner." By their own assertion, counsel had *no* time to prepare the case before selecting the jury and possibly, before the opening speeches.

Further inquiry of this Court is required as to whether the hasty appointment was inherently prejudicial. In resolving this question, a brief recitation of the facts is required.

At the time of the incidents for which the relator was convicted, the prosecutrix was age 14; consequently, he was indicted for statutory rather than common law rape, 18 P.S.Pa. § 4721, as well as for sodomy. The evidence adduced at trial was principally elicited from the prosecutrix and her mother. On February 2, 1963, they visited the relator's apartment, ostensibly to pick up a hi-fi set, which the relator had promised to give them. After instructing the mother to wait in his apartment, the relator allegedly took the prosecutrix to someone else's home, for the purpose of obtaining the hi-fi set. They were unsuccessful, however, and according to the prosecutrix they returned to the relator's apartment. Rather than enter the apartment through the door, the relator ordered the prosecutrix to enter through a window into the bedroom where he allegedly committed the act of sodomy. The two then went downstairs where the mother was waiting. Without informing her of what had just transpired, the prosecutrix and her mother departed for their home.

The essence of the relator's position is that the late appointment of counsel prevented him from adequately preparing a defense. Specifically, he contends that appointed counsel failed to obtain the presence of an alibi witness, one Johnny Blackwell, the relator's roommate, who was allegedly present in the apartment during the evening in question, and would have substantiated the relator's position. On cross-examination, the relator so testified (N.T. p. 134). However, no effort was made by counsel to obtain this alibi witness before trial, or even to move for a continuance or recess during trial after the relator had testified on cross examination of the witnesses' existence.

This same witness was present, according to the relator, on the day of the alleged rape. However, one additional witness was *also* present (again according to the relator)—one Amos Grattison (N.T. p. 129). No effort was made to obtain the presence of this witness either.

■■ We are not persuaded that the prospective witnesses named above would have necessarily provided the relator with an "alibi" sufficiently impregnable to warrant acquittal. However, under the rule of *Mathis*, once the relator establishes that counsel were appointed on the eve of trial, which precluded him from the advantage of an adequately prepared defense, the burden shifts to the prosecution. Since the Commonwealth has failed to introduce any evidence to the contrary, we are constrained to conclude that the relator is entitled to habeas relief.

■ As previously mentioned the relator was charged with statutory rape. Section 4721 of the Pennsylvania Penal Code states in relevant part, that:

> * * * if the jury shall find that such woman child was not of good repute, and that the carnal knowledge was with her consent, the defendant

shall be acquitted of rape, and be convicted of fornication.

Thus under the law of the Commonwealth, a person accused of statutory rape is entitled to introduce evidence of bad reputation. Commonwealth v. Bonomo, 396 Pa. 222, 151 A.2d 441 (1959). Refusal to permit introduction of testimony to that effect, is considered reversible error. Commonwealth v. Perry, 199 Pa.Super. 379, 185 A.2d 809 (1962). In the instant case, defense counsel indicated to the Court, at side-bar that:

> Your Honor, we have information * * * that this girl [prosecutrix] and her mother were arrested by the Hellertown Police for prostitution within the last two weeks [two months after incidents for which relator was indicted].

Defense counsel then continued:

> * * * we are trying to check it right now * * * [N.T. pp. 54–55]

Later on, the court permitted defense counsel to further cross-examine the prosecutrix regarding this matter, "if you can assure the Court that you will follow it up with independent evidence." (N.T. p. 57). However, no effort was made to subpoena or otherwise obtain the presence of the police witness who might have been in a position to substantiate this possible defense.

There were two other persons who could have aided the defendant in establishing his defense, but which were not called or even contacted by defense counsel; Mary Jane Sterner, whose relationship with the relator may have presented the real motivation on the part of the prosecutrix-mother for rather vigorously pursuing the criminal action. (N.T. pp. 110–115). At the very least, the testimony of the Sterner witness (assuming *arguendo*, that she would have testified as the relator indicated) would have seriously impeached the credibility of the prosecutrix's mother, and to some extent, the prosecutrix herself. However, as previously mentioned this was not pursued, although her name and relationship with the relator was brought out on several occasions at the trial. (N.T. pp. 114–115; 42–43; 82–85).

Finally, there was some controversy regarding the method which the Commonwealth used to gain possession of the knife which the relator allegedly used to force the prosecutrix into submission. The relator contends that he relinquished the knife to one "Alderman Smith" pursuant to an earlier charge of breach of surety of the peace. This would be consistent with the relator's basic defense that he did not engage in any acts with the prosecutrix at any time. Although defense counsel indicated that a telephone call was placed in an effort to reach Smith, this was unsuccessful, and no further attempts were made to obtain Smith's appearance by way of subpoena.

It is apparent from the testimony related above, that there were several matters of substantial significance in the preparation of a defense which by reason of their late appointment, defense counsel were unable to thoughtfully consider and thoroughly investigate. See Martin v. Virginia, 365 F.2d 549 (4th Cir., 1966). It is further apparent that the Commonwealth has failed to demonstrate that the relator was not prejudiced by the late appointment of counsel. See Twiford v. Peyton, 372 F.2d 670 (4th Cir., 1967).

Apparently defense counsel agreed with our conclusion. At the Federal habeas hearing, the relator's principal defense counsel indicated that if he had it to do all over again, he would have moved for a continuance, since he "did not eliminate everything". Similarly, his co-counsel indicated that if he had to try it over again, he would also have moved for a continuance, in order to further develop the contemplated defense and investigate the prospective witnesses. These reasons compel the granting of the petition for a writ of habeas corpus.

The Court wishes to acknowledge with sincere appreciation the efforts of Patrick J. O'Connor, Esquire, of Philadelphia, who represented the relator without

compensation in the finest traditions of the bar.

## ORDER

And now, this 12th day of June 1969, it is hereby ordered that the petition for a writ of habeas corpus is granted.

It is further ordered that execution of this writ is stayed for thirty (30) days to enable the Commonwealth to either perfect an appeal, or to grant the relator a new trial. At the expiration of thirty days, this Order shall become final.