**UNITED STATES of America ex rel. Edward DENNIS**

v.

**Alfred T. RUNDLE, Superintendent.**

Misc. No. 4212.

United States District Court
E. D. Pennsylvania.

July 10, 1969.

C. Clark Hodgson, Jr., Philadelphia, Pa., for relator.

Vram Nedurian, Jr., Asst. Dist. Atty., Media, Pa., for respondent.

## OPINION

LUONGO, District Judge.

In this habeas corpus petition relator, Edward Dennis, alleges that he was denied his Sixth Amendment right to the effective assistance of counsel and that his guilty plea was not voluntarily and intelligently made. On June 20, 1957 relator and a co-defendant named Wilson entered pleas of guilty in the Quarter Sessions Court of Delaware County to indictments charging rape, robbery and related offenses. Relator received consecutive sentences totalling ten to twenty years. He took no appeal.

In 1967 relator filed a habeas corpus petition in the Quarter Sessions Court of Delaware County alleging both ineffective counsel and an involuntary guilty plea. The petition was denied without a hearing. The Pennsylvania Superior Court affirmed. Commonwealth v. Dennis, 210 Pa.Super. 736, 231 A.2d 334

(1967). The Supreme Court of Pennsylvania reversed and remanded to the Quarter Sessions Court with instructions to conduct a hearing to determine the voluntariness of relator's guilty plea. Commonwealth v. Dennis, 427 Pa. 69, 233 A.2d 525 (1967). Upon remand, the petition was dismissed after hearing. The Superior Court affirmed and the Pennsylvania Supreme Court denied allocatur on October 15, 1968. Relator has exhausted all available state remedies.

In his federal court petition relator has advanced the same contentions which the state courts considered and rejected. No evidentiary hearing has been held because the parties have agreed that the state court record is sufficient for a resolution of relator's contentions.

Dennis and his co-defendant, Wilson, were indicted and arraigned[1] on June 4, 1957. Trial was set for June 19 but was postponed one day because defendants' court appointed counsel was engaged in the trial of another case. On June 20, after meeting with counsel, both defendants changed their pleas to guilty.

Relator testified at the post conviction hearing that he first met with his counsel, William C. Archbold, Jr. (one of the two Public Defenders in Delaware County at that time), in the courtroom on June 20 just before trial; that he and Wilson spoke with Archbold not more than five or six minutes; that during the brief conversation the attorney advised them to plead guilty because they were Negro and the prosecutrix was white; that if they did not change their plea he would not help them; that if they did plead guilty "he could not promise [them] that he would get [their] time concurrent [with pending Philadelphia sentences], but he would stand up and state it in some words to

that effect, that he would try to help [them] in some kind of way." (N.T. 6, 7); that the attorney did not advise them of any rights at all, did not explain what sentences they could receive and did not discuss any possible defenses they might have. Dennis also testified that he had never been brought before the prosecutrix to be identified before trial. Dennis' testimony was corroborated by the co-defendant, Wilson.

The attorney, Archbold, testified that all notes of the case had been lost, so his testimony was based almost entirely upon his unrefreshed recollection. The only aids he had were the criminal trial list booklet for June 1957 and the daily sheets of the grand jury for that period. Archbold stated that he had a strong recollection of the case, but pointed out that the recollection was based upon "what transpired after the plea of guilty was entered and after testimony [of the investigating police officer] was taken," and added that this "had nothing to do with the advice that I gave these two gentlemen, the petitioners in this case, because I did not know those facts at that time." (N.T. 22).

What Mr. Archbold did recall as to the proceedings in the courtroom on June 20 is in substantial accord with relator's testimony. He agreed that he probably discussed the case for the first time with the relator in the courtroom on June 20 although he recalled nothing of the conversation. He agreed that that conversation could well have lasted only five minutes because that was how long, in his opinion, it would have taken the defendants to indicate that they wished to plead guilty. He testified that he had not investigated the case and was not in a position to try it that day. He also did not recall being in court for relator's arraignment on June 4 but concluded that, since his name was

---

1. There is some question whether the defendants were physically present in court for arraignment. The Quarter Sessions Court docket entries contain a notation that the defendants were present with counsel and pleaded guilty. Relator testified that he was not present and counsel had no recollection one way or the other although some practices concerning the printing of the trial lists caused him to conclude that the defendants probably were present.

printed beside the relator's and Wilson's names in the criminal trial list prior to June 19, he must have been in court with them on June 4. However, Archbold candidly added that "I will say in fairness * * * that that does not mean that I spoke at any length with those men at that time, and that is the real question * * *." (N.T. 21). He was certain that he did not advise relator of the right to appeal and he did not remember advising him of the right to a jury trial, of the maximum sentence he might receive or of any possible defenses he might have. Because he had no recollection of his in-court conversation with relator and Wilson, Archbold answered with three general statements the specific questions whether he advised them to plead guilty because the prosecutrix was white and whether he told them that he would try to win concurrent sentences for them. First, he had never coerced any person to enter a plea of guilty and he would not have told these defendants that he would not help them if they did not plead guilty. Second, he would not have mentioned that the prosecutrix was white because as a general rule he found it difficult to talk to people about their color. Third, he would not have sought a concurrent sentence, because he was aware that the court would not have been favorably disposed to impose sentences concurrent with those from other jurisdictions.

### I. *Ineffective assistance of counsel.*

Respondent contends that Dennis' testimony is not worthy of belief and cites several instances of alleged contradictions between his testimony and that of the attorney, Archbold. Respondent also asserts that the claim of ineffective assistance of counsel is baseless since there is evidence in the Quarter Sessions docket entries that counsel was appointed well in advance of the date set for trial.

As for the alleged contradictions in the testimony of relator and his trial counsel, there was very little conflict in their testimony bearing on the crucial constitutional issues, i.e. effectiveness of counsel and intelligence of plea. For example, Archbold concluded (from an examination of the criminal trial list) that he must have been in the courtroom with Dennis and Wilson at arraignment on June 4, and in that sense he contradicted Dennis' testimony that he (Dennis) was not in court on June 4, but on what Archbold himself characterized as the "real question", he corroborated Dennis' testimony that he (Archbold) did not discuss the case with either defendant prior to the court appearance on June 20. Archbold conceded further that he had done nothing to prepare the case between June 4 and June 20; that his sole conversation with Dennis and Wilson took place in the courtroom on June 20 and lasted not more than five or six minutes. Under those circumstances, whatever disagreement there may be between relator's and Archbold's account of what was discussed (according to Dennis) and what *probably* was not *discussed* (according to Archbold) during that brief conference has little significance. The significant fact is the brevity of the conference.

> "The conflicting testimony as to what transpired during that conference is dwarfed in importance by the overwhelming uncontroverted fact that it lasted *only five minutes.*" Bentley v. State of Florida, 285 F.Supp. 494, 497 (S.D.Fla.1968) (Emphasis in original.)

▮▮▮ There is little doubt that relator has established a prima facie case of denial of effective assistance of counsel. Whether counsel was appointed at arraignment on June 4 or on the eve of trial on June 19, it is clear that there was no communication between counsel and relator until five minutes before the plea was entered. To all intents and purposes it is as if counsel had not been appointed until the plea was entered. Inherent prejudice may be inferred from such late appointment and the burden of proving lack of prejudice shifts to the prosecution. United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3d Cir.

1968). "[P]rima facie ineffectiveness or the inherent prejudice due to the late appointment of counsel may properly be overcome *either* by evidence produced by the state in an evidentiary hearing showing that there was no prejudice *or* by adequate affirmative proof *otherwise* appearing in the record demonstrating that the (relator) was not prejudiced." United States ex rel. Chambers v. Maroney, 408 F.2d 1186, 1190 (3d Cir.1969) (Emphasis in original.)

Has the prosecution carried its burden to overcome prima facie ineffectiveness or inherent prejudice either (1) by evidence produced at the post conviction hearing or (2) by affirmative proof otherwise appearing in the record?

### (1) *Evidentiary hearing.*

The state post conviction evidentiary hearing disclosed that relator entered a guilty plea at a time when his attorney knew little, if anything, about the case. He had not conducted an investigation of the facts, nor had he discussed possible defenses with his clients. Nothing was presented in the post conviction hearing to overcome prima facie ineffectiveness or inherent prejudice. The time element here was such that counsel "was simply in no position to evaluate his case and make considered judgments on these matters." Martin v. Commonwealth of Virginia, 365 F.2d 549, 554 (4th Cir.1966); Coles v. Peyton, 389 F.2d 224 (4th Cir.1968); Fields v. Peyton, 375 F.2d 624 (4th Cir.1967).

### (2) *Affirmative proof in record.*

Nor is there any affirmative proof in the record of the state criminal proceeding that relator was not prejudiced by late appointment of counsel. That record consists of several docket entries and a few pages of transcript of proceedings at the time of the change of plea and imposition of sentence. Testimony of the investigating police officer was taken for sentencing purposes following the guilty plea. The officer testified that the prosecutrix was seized from behind while walking in a lonely area on a rainy night. She was thrown onto the back seat of a car by two men who took turns driving the car and assaulting her. The victim was robbed and was put out of the car. Eventually the prosecutrix was taken to a hospital where she was examined and treated. She gave the police a description of her attackers and of the car.

The police officer's testimony suggests a number of questions and possible defenses which counsel might and should have explored with the defendants and by investigation. Had the prosecutrix made a pretrial identification of the defendants? If so, was it positive or equivocal? What did the hospital examination reveal as to penetration? Had both defendants actually raped the victim? Which of the two or had both actually committed the robbery? What were the circumstances surrounding the arrest and the questioning of the two suspects? It was incumbent on counsel to pursue these questions and many others in order to be sufficiently informed to advise his clients to plead guilty or to acquiesce in their decision so to plead. In the five or six minutes that the meeting between counsel and defendants lasted, these matters could not have been intelligently, or even superficially, pursued. It is not relator's burden to predict the outcome of a thorough inquiry by counsel into possible defenses. To require relator now to demonstrate that proper inquiry would have led to a different result would require him "* * * to establish by his own efforts those things for which the law recognized the needed assistance of counsel in the first place * * *." Martin v. Commonwealth of Virginia, supra, 365 F.2d at page 551.

The prosecution has not carried its burden of proving that relator, Edward Dennis, was not prejudiced by late appointment and ineffective assistance of counsel.

### II. *Voluntariness and intelligence of plea.*

To satisfy the due process clause of the Fourteenth Amendment a

guilty plea must be given voluntarily after proper advice of counsel and with full understanding of the consequences. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). A guilty plea not entered in conformance with these requirements is void and a conviction based upon such plea is open to collateral attack. Machibroda v. United States, *supra*.

██ No record inquiry was made on June 20, 1957 as to the voluntariness of relator's plea. In the absence of such inquiry the procedural burden of establishing the validity of the plea shifts to the Commonwealth. United States ex rel. Fink v. Rundle, 414 F.2d 542 (3d Cir. June 24, 1969); United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3d Cir.1968); United States ex rel. McCloud v. Rundle, 402 F.2d 853 (3d Cir. 1968). Non-inquiry by the court "forms an integral part of the totality of circumstances which must be considered in determining whether the plea was knowingly entered. * * * In this respect, the nature of the legal advice and information imparted from attorney to client * * * become(s) relevant on this issue of the (relator's) actual, rather than presumptive undertaking of his plea." United States ex rel. Crosby v. Brierley, *supra*, 404 F.2d at page 796.

As there is no inquiry at all into the voluntariness of relator's plea [2] on the record of June 20 it is necessary to refer again to the testimony of relator and of counsel at the post conviction hearing. Their testimony established that counsel did not advise relator of his constitutional rights; he did not inform him as to the sentences he could receive; he did not discuss possible defenses; and relator was not aware that, by

pleading guilty, he was waiving any defenses he might have had. The Commonwealth has not met its burden of proving that relator's plea was voluntarily, knowingly and intelligently made.

Both because of ineffectiveness of assistance of counsel and because the plea of guilty was not voluntarily and intelligently entered, the writ will issue but its execution will be stayed for forty-five (45) days to enable the Commonwealth of Pennsylvania to appeal from this order or to proceed with a re-arraignment of relator properly represented by counsel.

The Court acknowledges with grateful appreciation the outstanding service rendered by C. Clark Hodgson, Jr., Esquire, who has represented relator at the request of the Court and without compensation.

---

2. The United States Supreme Court has recently indicated that it is fundamental error for a state trial judge to accept a guilty plea without a record inquiry showing that it was entered intelligently and voluntarily. This will eliminate subsequent "collateral proceedings that seek to probe murky memories." Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 1713, 23 L.Ed.2d 274 (1969). In view of the other holdings in the instant case, it is not necessary to consider whether Boykin is to be given retrospective effect.