**A. J. SIMLER, Plaintiff,**

v.

**Leslie L. CONNER, Defendant.**

**Phillips Petroleum Company, a Corporation, Additional Defendant.**

**No. 8008.**

United States District Court
W. D. Oklahoma.
April 1, 1964.

John B. Ogden, Oklahoma City, Okl., for plaintiff.

Paul C. Duncan, Oklahoma City, Okl., for defendant Conner.

Cecil C. Hamilton, Oklahoma City, Okl., for defendant Phillips Petroleum Co.

BOHANON, District Judge.

The plaintiff, A. J. Simler, was at all times mentioned herein a citizen and resident of the State of Arkansas. The defendant Leslie L. Conner was at all times mentioned herein a citizen and resident of the State of Oklahoma. The defendant Phillips Petroleum Company, a corporation, has its principal place of business in the State of Oklahoma. The amount in controversy, exclusive of interest and costs, exceeds the sum of $10,000, and therefore the Court has jurisdiction of the parties and the subject matter of this action. The defendant Phillips Petroleum Company has no interest in this matter except as a stakeholder, and it will not be necessary to further refer to this company except in that capacity.

The parties to this litigation at pretrial hearing stipulated to waive a jury trial and agreed to try the case to the Court.

This case involves the fixing of a reasonable attorney's fee for the defendant Conner under a contingent fee arrangement with the plaintiff Simler.

The case was tried to the Court on February 10 and 11, 1964, and the Court,

having heard and duly considered all of the pleadings, depositions, evidence, and exhibits, finds the essential facts as follows:

### Findings of Fact

1. Birdine Fletcher owned the Northwest Quarter of Section 34, Township 6 North, Range 10 West, Caddo County, Oklahoma, together with other property. She made a Will dated July 9, 1952, in which she devised to A. J. Simler, her brother and only heir, "the sum of $1.00, this amount and no more." And the remainder of her estate to others, and the particular land in question to Mt. Alverno Convent and St. Joseph's Hospital, both of Maryville, Missouri, and St. Anthony Hospital of Oklahoma City, in equal shares. Mrs. Fletcher died testate in Oklahoma City on July 13, 1952, and her Will was filed for probate in Oklahoma County on July 14, 1952.

2. The plaintiff Simler, on July 18, 1952, employed the defendant Conner, a licensed and practicing attorney, by written contract, to represent him, in contesting the Will of his sister and to recover on his behalf all or part of the assets of the estate of his sister. This contract provided for a reasonable contingent fee to be fixed by the Court. In compliance with this contract Conner performed valuable services for and on behalf of Simler, which were successfully completed by defendant in May, 1957, resulting in the recovery for the plaintiff of accumulated oil and gas runs, and the above described 160 acres of land with the sixteen producing oil wells thereon, subject to an oil and gas lease in favor of the defendant Phillips Petroleum Company and assigns.

3. The defendant Conner, with the knowledge and consent of Simler, employed other attorneys to assist him in the litigation for the recovery of the above described property. Conner employed Mr. James E. Grigsby and Mr. Phil Daugherty, both licensed practicing attorneys in Oklahoma City, who were to be paid for their services a part of the proceeds, if any, from Conner's contingent fee contract, when such services had been completed. On September 25, 1952, plaintiff and defendant agreed in writing that a "reasonable contingent attorney's fee" as provided in the contract of July 18, 1952, would be a graduated fee of 25 per cent if the case was settled, 33⅓ per cent if tried, and 50 per cent if it was necessary to appeal, or defend an appeal in the Supreme Court, and it was under the terms of this letter that Conner employed Mr. Daugherty and Mr. Grigsby. At pretrial conference it was stipulated by the parties and their attorneys that defendant would not rely on the contract .of September 25, 1952, but that the contingent attorney's fee should be fixed by the Court, without a jury, to be paid in money only, and that Conner and his associates relinquished their rights to any interest in the real estate above described and the oil and gas production therefrom, except as hereinafter stated.

4. The defendant Conner investigated the facts of the case, and made an extensive research of the law, and performed an enormous amount of trial services for the plaintiff Simler. The legal services rendered by the defendant Conner covered a period from July 18, 1952 through May, 1957, and during this time there was continuous investigation, legal research, trial of cases, preparing appeals, and defending appeals in the Supreme Court of the State of Oklahoma, the Court of Appeals, Tenth Circuit, and the United States Supreme Court, which, of course, necessitated a great deal of work in the matter of legal research, preparing briefs, and making oral arguments before these Courts. The defendant Conner contested the Will of Simler's sister, Birdine Fletcher, in the County Court of Oklahoma County in Case No. 31726, and this case was twice appealed to the District Court of Oklahoma County, and these cases then appealed to the Supreme Court of the State of Oklahoma, and there became cases No. 36075, In re Fletcher's Estate, 269 P.2d 349, and No. 37365, 308 P.2d 304. Four separate cases were filed in the United States

District Court for the Western District of Oklahoma by the defendant for the plaintiff. There were three appeals to the Court of Appeals, Tenth Circuit, from these cases. Also there were three appeals to the Supreme Court of the United States from the Court of Appeals, Tenth Circuit, being cases No. 677 (1954), Wilson v. Simler, 347 U.S. 954, 74 S.Ct. 681, 98 L.Ed. 1099; No. 510 (1955), 348 U.S. 929, 75 S.Ct. 342, 99 L.Ed. 728; and No. 409 (1955), 350 U.S. 892, 76 S.Ct. 153, 100 L.Ed. 785. Also there was one original action filed by the plaintiff in the Court of Appeals, Tenth Circuit, No. 5201 (not reported). Conner successfully defended an original action in the Supreme Court of the State of Oklahoma, filed against the plaintiff by the Executor of the Estate of his deceased sister, and the Sisters of St. Francis, the residual beneficiary of the Will. This suit was an attempt to defeat Federal Court litigation. And the defendant Conner successfully defended another action filed in the District Court of Oklahoma County against plaintiff and his attorneys.

5. Attorney Grigsby was employed by Conner on the basis of 28 per cent of Conner's fee. Mr. Grigsby filed suit against plaintiff; Conner could not represent Simler and he employed John B. Ogden and paid him a fee of $7,500, and here claims credit for this $7,500 expense. Mr. Grigsby disassociated himself with the litigation before it was completed and assigned to Simler this 28 per cent in Conner's contingent fee, for which he received a note of $12,000, secured by a mortgage on the above-described land. This note was paid and the mortgage released.

6. From July 18, 1952, to the last of May, 1957, the income from the described farm was paid to W. H. Wilson, Executor of the Estate of Birdine Fletcher, deceased. As a result of the legal services performed by Conner, Simler has been paid in cash by the Executor of the Fletcher Estate the sum of $88,446.62; from June 1, 1957, to February 11, 1964, the defendant Phillips Petroleum Company, from oil and gas sales, has paid into the Clerk's office the sum of $238,431, pursuant to an order of this Court. From this sum, by Court order, Simler was paid $47,163.50, making a total sum received by Simler of $135,610.12. There remains in the office of the Clerk of this Court the sum of $191,267.50.

7. The Court finds that as of the first day of June, 1957, the proved primary and secondary oil, gas and mineral reserves, and undeveloped oil and gas reserves, above the 6400 foot level, that is, 6400 feet from the surface of the land, to the interest therein recovered by Conner for Simler, had a total value as of that date and future realization to Simler of $779,480.

The Court finds that the value of the surface rights of the farm as of the date of the completion of Conner's services was $12,000.

8. By stipulation of the parties, it was agreed that plaintiff Simler advanced and paid out as litigation expenses and costs the sum of $5,000, for which he is entitled to reimbursement out of the funds on deposit with the Clerk of this Court.

9. The defendant Conner has been paid by the plaintiff Simler the sum of $24,000.

10. The Court finds that a reasonable contingent attorney's fee for all the services rendered to the plaintiff Simler by the defendant Conner as hereinabove enumerated is 50 per cent of the June, 1957, value of the total recovery, which includes property, cash, and oil and gas mineral interests. From this fee percentage, the Court finds that Simler is entitled to offset against the same 28 per cent of said 50 per cent (or a total of 14 per cent offset) and that Simler is entitled to 64 per cent of all the recovered property, money, and oil and gas interests, plus $5,000, as above found, for litigation expenses and costs, and that Conner should receive and recover 36 per cent of the cash value of all the recovered property; that the respective percentages of the cash on hand, and

accruing, be paid to the respective parties as above outlined, and that the defendant Conner should have a lien on the property for the unpaid balance of his fee, to the extent of 36 per cent of the income from the oil, gas and other production from the above-described farm, and that Simler is entitled to the remaining 64 per cent.

11. The Court finds that Conner and his associates should be denied any permanent interest in the surface of the above-described land or any interest in the rents and profits during past years or future years (other than above stated).

12. At the close of all the evidence in this case, the Court made an oral declaration of his findings and judgment, which was not intended to be all-inclusive, and made no finding as to an item of expense of $7,500 incurred by Mr. Simler for attorneys' fees to represent him in the case filed by Mr. James E. Grigsby. Upon full consideration of this phase of the case, the Court now finds that the defendant Conner should not be charged with any part of this expenditure. The Circuit Court opinion decreed the Fletcher farm to be the property of Simler and held that the charitable foreign corporations, Mt. Alverno Convent and St. Joseph's Hospital, of Maryville, Missouri, and St. Anthony Hospital, of Oklahoma City, under the Constitution of the State of Oklahoma could not have and receive title to the Fletcher farm. Thereafter certain distributions were made to Simler. Attorney Grigsby, who had been employed by Conner on the basis of 28 per cent of the Conner fee, made demand for his portion of that distribution. Mr. Simler declined distribution; the reasons here are not important. Grigsby filed suit for his portion of the fee based upon his contract with Mr. Conner. Mr. Conner declined to represent Mr. Simler in the litigation because of the relationship between Conner and Grigsby, and it resulted in Mr. Simler employing Mr. John Ogden as his attorney in that matter. This suit resulted in Mr. Simler paying to Mr. Grigsby the sum of $12,000 for an assignment of the 28 per cent of the Conner fee, otherwise Grigsby's interest in the Conner fee contract. Mr. Simler paid Mr. Ogden the sum of $7,500 attorney's fee in the Grigsby-Simler lawsuit, and Simler here is claiming a refund of this amount.

In allowing Mr. Simler credit for the full 28 per cent of Mr. Grigsby's interest in Mr. Conner's fee, the Court finds that basically the attorney's fee allowed in this case is slightly more than 36 per cent.

In making the fee allowance, the Court denies Conner and his associates any interest in the oil and gas or other mineral reserves in the following known producing horizons:

(a) The Gilcrease Sand above the Hunton Lime.
(b) Hunton Lime Formation.
(c) Simpson Formation.
(d) Upper and lower Dolomite.
(e) Wilcox Sand Formation.
(f) McLish Sand Formation.
(g) Oil Creek Sand Formation.

Except as these formations may be obligated to pay the judgment lien in favor of Conner.

The experts who testified at the hearing in this case stated it was their opinion that the above-named formations did underlie this land below the 6400 foot level, and the right to explore these formations and produce the oil and gas therefrom had considerable value, although no specific value could be placed thereon. Conner and his associates are denied any interest in these valuable rights.

*Conclusions of Law*

1. Defendant Leslie L. Conner's contract dated July 18, 1952, is a contingent fee contract dependent upon recovery and is valid and enforceable in Oklahoma. That attorney's contingent fee contract not to exceed 50 per cent of the recovery is provided for and allowed by the Statutes of the State of Oklahoma,

132

Title 5 O.S.A., Section 7, which statute was in force and effect on July 18, 1952.

2. That as a result of all the legal services performed for A. J. Simler by the defendant, Leslie L. Conner, the plaintiff, A. J. Simler, contrary to the terms of his sister's Will, and as a result of the contest thereof, became the owner of the real property and all the oil, gas and minerals therein, subject to existing oil and gas leases, described as:

Northwest Quarter (NW/4) of Section Thirty-four (34), Township 6 North, Range 10 West of the I.M., in Caddo County, Oklahoma,

and all accumulations, monies, runs, and things incident thereto, all of which he has accepted.

■ 3. That the written assignment by James E. Grigsby to A. J. Simler of the 28 per cent contingent fee contract of any contingent fee awarded Leslie L. Conner is valid. That the plaintiff, A. J. Simler, is entitled to 28 per cent of any attorney's fee hereinafter awarded to the defendant, Leslie L. Conner, which 28 per cent shall be deducted and retained by A. J. Simler from the fees of Leslie L. Conner.

4. That plaintiff, A. J. Simler, is to be paid the sum of $5,000 as the stipulated amount of his expenses and to reimburse him therefor.

5. The Court concludes that there has been paid from the estate of Birdine Fletcher to A. J. Simler the sum of $88,-446.62, and by Phillips Petroleum Company, a corporation, the sum of $238,431 into the registry of this Court, being a total amount of $326,877.62, less $5,000 expense money to be paid A. J. Simler, leaving a balance of $321,877.62. That the defendant, Leslie L. Conner, is entitled to 50 per cent of $321,877.62, which is $160,938.81, less $45,062.86, which is 28 per cent thereof, leaving a total sum of $115,875.95 due Leslie L. Conner from the cash on hand. That plaintiff, A. J. Simler, is entitled to credit of $24,000 from this amount, leaving a net balance to be paid by the Clerk of this Court to defendant, Leslie L. Conner, of $91,875.-95. That the value of the surface of the property as of May, 1957, was $12,000. That Leslie L. Conner is entitled to be paid immediately by the Clerk of this Court an additional $4,320, which is 50 per cent of $12,000 surface value, less the 28 per cent Grigsby interest of A. J. Simler. That any other funds held by any other persons, firms, or corporations, or hereafter paid into this Court, attributable to this described Fletcher Farm, are to be distributed by the Clerk of this Court 64 per cent to A. J. Simler and 36 per cent to Leslie L. Connor.

■ 6. That in addition thereto, the defendant, Leslie L. Conner, is entitled to 50 per cent of $541,049, being the remaining value of the oil, gas, minerals interest in the above described farm as of the first day of June, 1957, which was $779,480, less the production and cash paid therefrom to the Clerk's office from June, 1957, to February 11, 1964, of $238,431. That the plaintiff, A. J. Simler, is entitled to set off from the 50 per cent of $541,049 (which is $270,524.50) an amount equal to 28 per cent thereof, which is $75,746.86, leaving a net amount to be paid to defendant, Leslie L. Conner, from the future oil, gas, mineral and produced reserves of said property, of $194,777.64. That out of the income from the production from the Northwest Quarter of Section 34, Township 6 North, Range 10 West, Caddo County, and any and all units of which it is a part or entitled to participate, there will be paid in monthly payments by defendant Phillips Petroleum Company, a corporation, and assigns, and any other companies producing from said property beginning after February 11, 1964, the following proportions, to-wit: 36 per cent thereof to Leslie L. Conner, and 64 per cent thereof to A. J. Simler, until the amount of $194,777.64 has been paid in full by them to Leslie L. Conner or his assigns, and then all of said remaining interest and payments reverts to A. J. Simler, and Leslie L. Conner is granted a lien on 36 per cent of the Simler minerals and mineral rights until this payment is paid or there is no further production.

7. That defendant, Leslie L. Conner, shall have the right, power, and authority to sign any instruments, assignments, leases, division orders, and such other instruments as affecting this oil payment on this described farm as he may deem necessary to effectuate this judgment, or to pool, unitize, waterflood for primary or secondary recovery for any orderly development thereof.

8. That the costs of this case are assessed against A. J. Simler to the extent of 64 per cent, and to Leslie L. Conner to the extent of 36 per cent.

9. The Court directs the entry of a judgment in favor of the defendant, Leslie L. Conner, and against plaintiff, A. J. Simler, in conformity with these findings of fact and conclusions of law.

In making a determination of the reasonableness of an attorney's fee, many varied and complicated facts must be taken into consideration. There is no fixed standard or guide by which the triers of the fact can be materially assisted, but the entire picture must be considered to arrive at a just conclusion, fair to all parties.

The Canons of Professional Ethics adopted in Oklahoma, Title 5, Chapter 1, Appendix 3, Oklahoma Statutes 1961, in pertinent part provide:

"In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the contro-

versy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

"In determining the customary charges of the Bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a Bar Association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee.

"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

In 7 C.J.S. Attorney and Client § 191, page 1080, 1081, it is stated:

"The reasonableness of the fee charged or allowed must be determined like any other fact in issue in a judicial proceeding, and in making such determination all the facts and circumstances of the particular case, including so far as applicable those enumerated herein below, must be taken into consideration.

"In determining what is a reasonable attorney's fee or allowance for legal services rendered, many and varied elements or factors are to be considered. Among the principal elements or factors to be considered are the amount and character of the services rendered, the nature, and importance of the litigation or business in which the services were rendered, the degree of responsibility imposed on, or incurred by, the attorney, the amount of money or the value of the property affected by the controversy, or involved in the employment, the degree of professional

ability, skill, and experience called for and exercised in the performance of the services, and the professional character, qualifications, and standing of the attorney, and also the amount recovered."

The general statements above quoted are helpful and, of course, should be considered, and the respective elements or facts to be considered must be viewed in light of the relative importance in the particular litigation for which an attorney's fee is sought and determined. The general rules, supra, have been considered and adopted by the Supreme Court of Oklahoma. See Miller, et al. v. Burkett, 191 Okl. 521, 130 P.2d 996; Driver, Plaintiff-in-Error, v. Tolstornog, et al., (Okl.) 358 P.2d 1108.

The Tenth Circuit, in United States v. Anglin & Stevenson, et al., 145 F.2d 622, had under consideration the allowance of attorneys' fees awarded by the United States District Court for the Eastern District of Oklahoma, and at page 630, Judge Murrah aptly stated:

"The allowance of 25% of the amount recovered is well within the proof adduced on this record in support of a reasonable attorney's fee, and it is well settled that in cases of this kind the allowance of attorneys' fees is within the judicial discretion of the trial Judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered. And an appellate Court is not warranted in overturning the trial Court's judgment unless under all of the facts and circumstances it is clearly wrong."

City of Wewoka v. Banker, 10 Cir., 117 F.2d 839.

Based upon a full consideration of all the facts, circumstances, and conditions surrounding the litigation out of which this case arises, and having heard and observed the witnesses on the witness stand, the Court feels that the amount of attorney's fee fixed by the Court is just, fair and reasonable.