**UNITED STATES of America ex rel.
Frank CHAMBERS**

**v.**

**James F. MARONEY, Superintendent,
State Correctional Institution,
Pittsburgh, Pennsylvania.**

**Civ. A. No. 67–1050.**

United States District Court
W. D. Pennsylvania.

March 6, 1968.

Frank Chambers, pro se.

Louis Abromson, Asst. Dist. Atty., Pittsburgh, Pa., for respondent.

## OPINION AND ORDER

MARSH, District Judge.

Relator has filed in this court a petition for a writ of habeas corpus. It appeared from the petition that all state remedies had been exhausted. On the basis of the petition, a rule was issued to show cause why an evidentiary hearing should not be granted. At the hearing the District Attorney submitted documents required under Local Rule 16(g). Based on the records submitted, the court is of the opinion that the rule should be discharged and the petition for writ of habeas corpus denied.

Relator was charged in two indictments for armed robbery and receiving stolen goods. The indictments resulted from the occurrence of two armed robberies of gas stations, one in the early morning of May 13, 1963,[1] and the other on the night of May 20, 1963.[2]

At trial relator was found guilty by a jury on all counts of both indictments and was sentenced to imprisonment for a total term of 6 to 15 years.[3] In his petition relator raises a number of contentions with respect to the manner in which the arrest was made and the manner in which certain evidence admitted at trial was obtained.

Relator contends that his constitutional rights were violated when the trial court admitted into evidence over two objections certain .38 caliber bullets which were seized during a search with a warrant of relator's home. Irrelevancy was the basis of the first objection, and lack of reasonable ground and failure to specify the items to be seized in the search warrant were the reasons for the second objection.

The trial Court overruled the objection to the deficiency of the search warrant

---

1. Indictment at No. 78 June Sessions, 1963; armed robbery (first count); receiving stolen goods (second count).

2. Indictment at No. 91 June Sessions, 1963; armed robbery (first count); receiving stolen goods (second count).

3. Relator was sentenced at No. 78 June Sessions, 1963 to imprisonment for not less than 4 nor more than 8 years, and at No. 91 June Sessions, 1963 to a consecutive term of not less than 2 nor more than 7 years.

on the ground that proper procedure with respect to suppression of evidence had not been followed (T., pp. 200–201). The procedure followed in Pennsylvania before the effective date of the pertinent Rules of Criminal Procedure required that any attack on allegedly illegally obtained evidence be made prior to trial. Of course, defense counsel must have a reasonable opportunity to conform to the procedure and if this opportunity does not exist, objection at trial would be proper. At a previous trial which ended in a mistrial, objection to the admission of the bullets was sustained (T., p. 115). Counsel who represented relator at the prior trial was different from his counsel at the latter trial which resulted in the conviction, although both were members of the Legal Aid Society of Allegheny County. Further, there is evidence tending to show that relator's counsel had no knowledge of any possible impropriety in the manner in which the bullets were seized until the time when they were offered (T., p. 200). Even if this counsel had the opportunity to utilize pre-trial procedure prior to the second trial, he was misled by the exclusion of the bullets at the prior trial into believing that upon objection they likewise would be excluded at the second trial.

 It seems that subsequent to trial the search warrant was lost. Thus, no opportunity exists to determine from inspection whether it was in fact defective. Whether the trial Judge, who probably saw the search warrant and admitted the bullets in evidence, thought it was valid does not explicitly appear. However, even if we assume that the warrant was defective[4] and that the search and seizure were unlawful, therefore causing the admission at the trial of the seized bullets to constitute constitutional error, nevertheless, it is not sufficient to entitle relator to relief if the error was harmless. Not all error

that is committed during a trial is harmful. The test for determining whether error is harmless or not was formulated by the United States Supreme Court in Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The Court held "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Using this test a court is justified in denying habeas corpus relief if it finds from the trial record as a whole that the error was harmless. Young v. Boles, 270 F.Supp. 847, 849 (N.D.W.Va.1967). A review of the entire trial record convinces this court that the alleged erroneous admission of the .38 caliber bullets was harmless beyond a reasonable doubt.

Relator was identified by the victim in court as one of the two perpetrators of the armed robbery which occurred on May 13, 1963. Relator was also identified at a lineup. The victim who formerly had been a police officer testified he had an opportunity to observe closely the facial features of the robber he identified (T., p. 9). He further testified that the robber had a .38 caliber revolver that was "sort of nickel-plated * * * [and] pretty well marred up * * *" (T., p. 10). He identified Commonwealth Exhibit 1 as appearing like the gun that was used. In addition to the money seized, the victim testified that his wallet containing four personal cards with his name on them was taken This wallet and cards were admitted in evidence (Commonwealth Ex. 2).

The cumulative effect of the evidence concerning the second robbery which occurred on May 20, 1963, also establishes that relator was one of the perpetrators. There was testimony of two teenagers that a blue station wagon with four Negro occupants was seen in a parking lot located near the gas station, was seen circling the block prior to the rob-

---

4. There is testimony in the record that the search warrant did not specify the bullets as items to be seized (T., p. 203; see also T., p. 199).

bery, and that immediately after the robbery it was seen leaving the area at a great rate of speed. One of the teenagers testified that one of the occupants of the car was wearing a green sweater.

The operator of the gas station related that while outside of the building he was approached by two men. One of the men showed a gun, and the operator and the two men proceeded into the building. In the building both of the men pulled out guns and the operator opened the cash register. Bills and change were removed and the change was placed in a right-hand glove which belonged to the operator (T., pp. 66–67). Commonwealth Exhibits 1 and 3 were identified by the operator as resembling the guns used and the glove marked as Commonwealth Exhibit 4 was identified as the glove used to carry the change. The operator further testified that one of the robbers was wearing a "green pull over sweater".[5]

The North Braddock police investigated the robbery and relayed the information concerning the blue station wagon to neighboring police departments. Based on this information, the Swissvale police within an hour after the robbery stopped a blue station wagon, in which relator was one of the occupants. The North Braddock police arrived and the relator and the vehicle[6] were taken immediately to the North Braddock police station. Lieutenant Wagner of the North Braddock police testified that relator was wearing a green V-neck sweater. Further testimony showed that the vehicle was searched at the police station and in a ventilator under the dashboard two .38 caliber revolvers, a glove full of change and two operator's licenses and other cards bearing the name of the victim of the first robbery were found. These items were admitted into evidence as Commonwealth exhibits.

In the light of the eyewitness identification of the relator, the recognition of the revolvers, the glove full of change, and the personal cards found in the station wagon, and the factor of the green sweater, we are convinced that beyond a reasonable doubt the alleged error committed in the admission of the .38 caliber bullets was harmless.

Relator further claims that there was no probable cause for his arrest and, therefore, his arrest without a warrant was unlawful. A lawful arrest without a warrant can be made if probable cause exists for making it. Probable cause is found to exist where police officers through reliable information have knowledge of facts and circumstances which are sufficient to cause a man of reasonable prudence to believe that a crime has been committed. McCray v. State of Illinois, 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Ker v. State of California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

The information within the knowledge of the Swissvale police furnished the ground for a reasonable belief that relator had been involved in an armed robbery. They had received information by radio concerning the robbery in North Braddock and they were alerted to watch for a light blue compact station wagon containing four Negro occupants. A vehicle answering the description was spotted. The officers verified the information they had and stopped the vehicle. The occupants, one of whom was relator, were taken into custody. We believe that these facts

5. The day after the robbery the victim was able to identify relator as one of the robbers but at trial a positive identification of relator could not be made because, as the victim explained, the dress of the relator was not the same and the relator did not have glasses or a mustache.

6. The blue station wagon was owned by one of the codefendants, Raymond Lawson.

and circumstances form the basis for probable cause and a legal arrest.

A claim is also made by relator that the search of the vehicle at the police station without a warrant was a violation of his constitutional right under the Fourth Amendment. The prohibition against unreasonable search provided by the Fourth Amendment is made applicable to the states by virtue of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The reasonableness of the search is determined on an ad hoc basis as measured by the federal standard. Ker v. State of California, supra. A search can be made without a warrant if conducted incident to a lawful arrest, Ker v. State of California, supra, and is reasonable under the circumstances. Having found that the arrest was lawful, it follows that the search was reasonable and incident to the arrest.

Relator was taken into custody based on information that an armed robbery had been committed. The nature of an armed robbery contemplates converted property and the instrumentalities used in commission of the crime. In the circumstances, it was proper to search for these items.

At the time the arrest was originally made, darkness would have prevented any search from being effective; therefore the search at the police station under more favorable conditions was permissible. United States v. Dento, 382 F.2d 361 (3d Cir. 1967). The Pennsylvania courts when confronted with similar facts have held that the search was reasonable. Commonwealth v. Cockfield, 411 Pa. 71, 190 A.2d 898 (1963); Commonwealth v. Czajkowski, 198 Pa. Super. 511, 182 A.2d 298 (1962).

The contention that relator's counsel was not competent is without merit. In re Ernst's Petition, 294 F.2d 556 (3d Cir. 1961); United States ex rel. Peterson v. Russell, 266 F.Supp. 93, 95 (W.D.Pa.1967).

An appropriate order will be entered.