**UNITED STATES of America ex rel. Frank CHAMBERS, Appellant,**

**v.**

**James F. MARONEY, Superintendent State Correctional Institution, Pittsburgh, Pennsylvania.**

**No. 17219.**

United States Court of Appeals Third Circuit.

Submitted Nov. 7, 1968.

Decided Jan. 22, 1969.

Rehearing Denied March 17, 1969.

Frank Chambers, pro se.

Charles B. Watkins, Asst. Dist. Atty., County of Allegheny, Pittsburgh Pa. (Robert W. Duggan, Dist. Atty., of Allegheny County, Pittsburgh, Pa. on the brief), for appellee.

Before KALODNER, FORMAN and STAHL, Circuit Judges.

## OPINION OF THE COURT

STAHL, Circuit Judge.

Appellant Chambers, having exhausted his state remedies, unsuccessfully sought a writ of habeas corpus in the district court.[1] No evidentiary hearing was held below. This appeal followed.

In his petition, appellant alleged that his state convictions on charges of armed robbery and receiving stolen goods[2] were

---

1. The opinion of Judge Marsh in the court below is reported at 281 F.Supp. 96 (W.D.Pa.1968).

2. While on parole from a prior conviction, appellant took part in two armed robberies of gas stations, one on May 13, 1963, in McKeesport, Pa., and the other on May 20, 1963, in North Braddock, Pa. He was found guilty by a jury and sentenced to a term of four to eight years for the May 13 charges and to a term of two to seven years for the other charges. The first sentence was to be served con-

currently with another sentence for an unrelated armed robbery offense imposed earlier [Commonwealth v. Chambers, 209 Pa.Super. 709, 224 A.2d 371 (1966), vacated by State Supreme Court and further appellate proceedings pending]; the two to seven year term of imprisonment was to be served consecutively to the other sentences. There was no direct appeal from these convictions.

The issues raised by appellant relate to the convictions for both the McKeesport and North Braddock offenses.

constitutionally defective for a number of reasons:

(1) There was no probable cause for his arrest;

(2) The search of the car in which he was a passenger at the time of his arrest was invalid on the ground that it was made without a warrant and was not incident to the arrest, even if the arrest was lawful;

(3) The search of his home was invalid, even though a search warrant had been obtained, because the warrant did not describe the product of the search which was admitted in evidence; and

(4) "The belated appointment of counsel rendered his services ineffective in that he was delegated to represent petitioner en route to the courtroom the day of the trial." [3]

The district court concluded that the first three grounds did not violate appellant's constitutional rights.

With respect to the Sixth Amendment claim of ineffectiveness of counsel, the court said that this "contention * * * is without merit," citing In re Petition of Ernst, 294 F.2d 556 (3d Cir. 1961), and United States ex rel. Peterson v. Russell, 266 F.Supp. 93 (W.D.Pa.1967).[4] The same contention as to ineffective counsel had been made in the habeas corpus proceeding in the state court [5] and was rejected in an opinion, dated December 2, 1966,[6] by Judge Graff, who had also been the trial judge.

We would dispose of this appeal on the well-reasoned opinion of Judge Marsh below were it not for the fact that following the date of that opinion (March 6, 1968), we established for the first time a definite standard for determination of the issue of ineffective counsel in belated appointment cases: United States ex rel. Mathis v. Rundle, 394 F.2d 748 (May 7, 1968). In a supplemental brief filed by appellant, he relies directly on Mathis for the requested relief. Neither the lower state court opinion nor the decision below discussed specifically the late appointment aspect of appellant's petitions.

Prior to Mathis this court had not dealt expressly with the issue of burden of proof where the claim of ineffective counsel was bottomed on hasty appointment.[7] In Mathis,[8] following the lead of

The answer filed in the state court habeas corpus proceeding by the Superintendent of the State Correctional Institution in Pittsburgh indicates that because these offenses constituted a parole violation requiring appellant to serve first the time remaining on a prior conviction, he may not begin serving the new sentences which he challenges until the end of January, 1969. This fact does not foreclose the present habeas corpus application, of course, Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), having abolished the prematurity doctrine. See also United States ex rel. Van Scoten v. Pennsylvania, 404 F.2d 767 (3d Cir. 1968).

3. From petitioner's pro se brief.

4. Ernst was not a belated appointment case. In Peterson there was an allegation of belated appointment, and the district court in an opinion by Judge Marsh concluded from "the entire record" that there was no resulting prejudice to petitioner.

5. Appellant said in his state petition: "Defense counsel being appointed the same day of trial without time to investigate and prepare the case nor even consult with the accused is a denial of due process."

6. Commonwealth ex rel. Chambers v. Duggan, No. 1988 January Term, 1966, Court of Common Pleas of Allegheny County, Pennsylvania, aff'd per curiam, 210 Pa.Super. 718, 231 A.2d 336 (1967), allocatur denied by the Supreme Court at No. 2193A Miscellaneous Docket, July 21, 1967.

7. In United States v. Helwig, 159 F.2d 616 (3d Cir. 1947), a federal criminal proceeding, we granted relief where the record showed that the defendant's counsel was appointed one minute before trial and defendant contended he was thereby denied sufficient time to prepare for trial. There was no discussion of whether the defendant had the burden of showing prej-

the Fourth Circuit,[9] we said that the belated appointment of counsel is inherent-

ly prejudicial and makes out a prima facie case of denial of effective counsel,

udice. Judge Biggs did conclude the opinion by stating: "It is notable also that the appellee [the United States] does not contend that Helwig was awarded due process of law guaranteed to him by the Fifth Amendment." Perhaps this comment presaged the *Mathis* holding that late appointment is inherently prejudicial and absence of prejudice must be proved by the prosecution.

Relying, *inter alia*, on *Helwig*, United States v. Vasilick, 206 F.Supp. 195 (M. D.Pa.1962), granted a new trial where counsel was appointed moments before trial even though there was no clear proof of prejudice made out by the defendant.

In another late appointment case, United States ex rel. Tillery v. Cavell, 294 F.2d 12 (3d Cir. 1961), in remanding the case to the lower court, we said:

The finding of fact that "counsel had not been appointed until the day of trial, * * *" was too limited and there should be explicit findings of fact that lead to the conclusion that counsel was unable to effectively represent Tillery otherwise than only from his being appointed on the trial day. 294 F.2d at 22.

In several more recent district court decisions in this Circuit prior to *Mathis*, where it was charged that counsel was appointed too close to the time of trial to become familiar with the case, it was stated that the "time of appointment of counsel, in itself, does not establish ineffective assistance." United States ex rel. Spears v. Rundle, 268 F.Supp. 691, 700 (E.D.Pa.1967), *aff'd per curiam*, 405 F.2d 1037 (3d Cir. 1969), where we held, after *Mathis*, that in the evidentiary hearing below the state had rebutted any presumption of injury; United States ex rel. Kelley v. Rundle, 242 F.Supp. 708 (E.D.Pa.), *aff'd per curiam*, 353 F.2d 214 (3d Cir. 1965).

8. In *Mathis*, the trial counsel, a voluntary defender, was assigned to the case by his office the night before the trial. His trial preparation involved review of the notes of a colleague, who had previously interviewed the petitioner in that case, as well as a half hour meeting with witnesses prior to the trial. In Judge Weiner's opinion, he noted that counsel was hard pressed to assure a conscientious defense, but he concluded, from the facts of the case and from counsel's inability to say in his testimony in the habeas corpus proceeding in the district court that he had been insufficiently prepared

to go to trial, that the prima facie presumption of denial of effective representation due to belated appointment (discussed *infra*) was effectively rebutted.

9. Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967); Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967); Martin v. Virginia, 365 F.2d 549 (4th Cir. 1966).

While the United States Supreme Court does not appear to have considered the precise question of burden of proof of prejudice in belated appointment cases, the whole concept of timely and effective representation by counsel stems, as we pointed out in *Mathis*, from Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where Justice Sutherland said that the "duty [to appoint counsel] is not discharged by an assignment *at such a time* or under such circumstances to preclude the giving of effective aid in the preparation and trial of the case." *Id.* at 71, 53 S.Ct. at 65. (Emphasis added.)

In Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940), the Court said:

Since the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial, the fact, standing alone, that a continuance has been denied, does not constitute a denial of the constitutional right to assistance of counsel. * * *

But the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. * * *

The Court held in *Avery* upon a review of the record that the trial court's denial of the motion for continuance was not a deprivation of the constitutional right to assistance of counsel.

Martin v. Virginia, supra 365 F.2d at 551, n. 3, cites language in Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), in support of the inherent prejudice rule. The Supreme Court said there, in another context:

It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a procedure employed by the State involves such a probability that

with the burden of proving absence of prejudice shifted to the prosecuting authorities.

■ At first blush it would appear that only an evidentiary hearing, in which the state adduces the testimony of the trial counsel and other evidence to rebut the taint of prejudice, can be sufficient to overcome the prima facie presumption of ineffective counsel. A closer examination of the full scope of the. Fourth Circuit rule we have chosen to follow discloses that denial of effective representation may also be refuted where the "record" contains "adequate *affirmative* evidence to overcome the presumption of harm from the lack of time for preparation" [10] by appointed counsel: Fields v. Peyton, 375 F.2d 624, 628 (4th Cir. 1967).[11] We construe this to mean that the prima facie ineffectiveness or the inherent prejudice due to late appointment of counsel may properly be overcome *either* by evidence produced by the state in an evidentiary hearing showing that there was no prejudice *or* by adequate affirmative proof *otherwise* appearing in the record demonstrating that the appellant was not prejudiced. We believe this is a logical approach which is fair to a petitioner seeking relief and at the same time comports with sound judicial administration.

■ The alternative methods of negating the prima facie harm from a belated appointment are of particular importance in the present case because the Commonwealth made no attempt in either the state or federal habeas corpus proceeding (as *had* been done in *Mathis*) to produce evidence showing that the appellant was not prejudiced by the late appointment of counsel.[12] Therefore, this court must either find from an examination of the record before us that there is adequate affirmative proof to rebut possible prejudice to the appellant or remand the petition to the district court for an evidentiary hearing.

With the foregoing guidelines in mind, we now turn to a review of the various

prejudice will result that it is deemed inherently lacking in due process. * * * 381 U.S. at 542–543, 85 S.Ct. at 1632.

10. Emphasis in original.

11. This element of the rule in the Fourth Circuit is still in effect. See Harris v. Peyton, 285 F.Supp. 107 (W.D.Va.1968).

12. The fact that the Commonwealth did not attempt to produce such evidence, *i. e.* by calling as a witness the counsel who was belatedly appointed, is understandable. In the first place, at least in the state proceeding, appellant seemed to have abandoned his ineffective counsel claim. See text at note 18, *infra*. Secondly, the *Mathis* rule was not in effect at that time, and the Supreme Court of Pennsylvania as late as November 14, 1967, following Commonwealth ex rel. Dion v. Tees, 180 Pa.Super. 82, 118 A.2d 756 (1955), had expressly rejected the burden of proof formula in belated appointment cases as developed in the Fourth Circuit. In Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 607–608, 235 A.2d 349, 354 (1967) the Court said:

Appellant asserts that counsel's lack of time to confer and prepare is inherently prejudicial and that, combined with three alleged trial errors, must result in a finding of ineffective assistance of counsel. The problem of the hastily appointed or insufficiently prepared attorney is one of first impression for this Court. Appellant insists, citing Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967), and Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967), that *once it is demonstrated that counsel had but a brief time to prepare, a prima facie denial of effective assistance has been shown and the burden of proof that counsel's representation was effective then should be placed on the state.* We can find no justification, however, for such an allocation of the burden of proof. As with other assertions of a denial of constitutional rights in post conviction proceedings, the burden remains throughout with the prisoner to demonstrate any constitutional deprivation. (Footnotes omitted.)

For subsequent disposition of a *federal* habeas corpus petition by the same relator [Washington] after *Mathis*, see note 34 *infra*.

The better practice now in this type of case would be to have the "belated appointee" testify at the earliest possible stage of post-conviction proceedings.

proceedings culminating in the instant appeal.

Appellant alleged in his state and federal habeas corpus petitions that he first met his counsel on the way to the courtroom on the day of the trial.[13] This was not denied by the District Attorney in his answer in the state court. The appointed defense counsel was Vincent A. Tamburo, Esq., of the Allegheny County Legal Aid Society, who was described by the state court as "an attorney of great experience in the trial of criminal cases." [14]

This was not the first time appellant had seen a lawyer, however, as this was a new trial on the same charges, the first one having ended in a mistrial. In the first trial appellant had been represented by another member of the Legal Aid Society staff. Also, in the habeas corpus hearing in the state court, in which appellant appeared,[15] the following colloquy took place:

> Mr. Abromson [Assistant District Attorney]:
>
> Q. So you have been in Jail for some five months, is that correct, before your trial?
>
> A. Yes.
>
> Q. And during that time, did anybody come to see you in your own behalf?
>
> A. Which way do you mean? Did an attorney come to see me?
>
> Q. Did anyone come to see you in own behalf?
>
> A. Yes.[16]

While it would appear from the foregoing that Mr. Tamburo had access to the Legal Aid Society files in this case, and that an attorney or a representative of Legal Aid may have visited appellant in jail, the plain fact is that appellant did not have the opportunity to consult previously with *the* counsel who came to defend him on the *morning* of the second trial. We do not know what preparation, if any, counsel was able to accomplish prior to the date of the trial as he did not testify in the state habeas corpus proceeding and there was no evidentiary hearing in the district court. From the lower court opinion, as will appear later, we are led to believe that counsel was not wholly familiar with all aspects of the case before trial.

Appellant asserts as the prejudicial effect of the late appointment the failure to present pre-trial motions to suppress several items of evidence admitted at the trial. The district court concluded from an examination of the transcript of trial that Mr. Tamburo probably had no knowledge of the manner in which some of the evidence was obtained by the police.[17]

Appointed counsel in the state habeas corpus proceeding, Mr. Dixon, did not pursue the belated appointment allegation as an independent ground for issuance of the writ, even though it was stressed in appellant's pro se petition. Mr. Dixon said:

> I want to make clear to the District Attorney it is not our intention to attack the effectiveness of counsel here.

---

13. Appellant repeated this in the state habeas corpus *hearing.* Hearing Transcript (H.T.) p. 3.

14. As stated by Justice Roberts in Commonwealth ex rel. Washington v. Maroney, note 12, *supra*, 427 Pa. at 612, 235 A.2d at 356, the "issue is not counsel's reputation or his ability, but his stewardship of the challenged trial." Thus a talented defense counsel may be ineffective simply because he has insufficient time for consultation with his client as appellant alleges here. *See also* Goodwin v. Swenson, 287 F.Supp. 166, 183 (W.D.Mo. 1968).

15. Appellant was represented in the state habeas corpus proceeding by another appointed counsel, F. Peter Dixon, Esq. At the beginning of the hearing, counsel indicated to the court that he did not want to take any testimony except for several questions of the appellant. (H. T. p. 2)

16. H.T. pp. 6–7.

17. 281 F.Supp. at 98. Appellant asserts in his brief before this court that "counsel had no knowledge of the fact [sic] surrounding the arrest or searches."

The only reason I brought out this particular circumstance was in relationship, and I will develop it, to the District Attorney's contention that our issue of the suppression of the evidence not being timely, that's the only reason I brought that out.

The Court: You are not raising—

Mr. Dixon: I am not raising the issue of the ineffectiveness of counsel.

The Court: It is in his statement here, his petition, but you are not raising it now?

Mr. Dixon: No.[18]

Mr. Dixon emphasized that he was referring to the belated appointment only to show why no pre-trial suppression motions had been filed. In his brief (p. 7) the District Attorney construes counsel's statement as indicating "that petitioner was abandoning the contention that his trial counsel was ineffective." In light of our disposition of this appeal we need not decide what effect, if any, the state habeas corpus counsel's statement had on appellant's Sixth Amendment claim which he raised again in the district court.[19]

■ It is fairly clear that Mr. Tamburo's appearance as defense counsel on the morning of the trial constitutes tardy appointment so as to raise the prima facie presumption of ineffective counsel under the *Mathis* standard. With no attempt by the state to rebut this presumption by the production of countervailing evidence, does the record otherwise contain adequate affirmative proof of lack of prejudice? We believe that it does.

Appellant's contention that his arrest without a warrant was invalid is not involved with the question of ineffective counsel. Judge Marsh's opinion below thoroughly recites the information which the police had from eyewitnesses[20] to support the arrest of appellant without a warrant for the commission of a felony: McCray v. Illinois, 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

The evidence as to which appellant contends pre-trial suppression motions should have been but were not filed due to the belated appointment of counsel consisted of (1) revolvers found in the warrantless search of the car in which appellant was a passenger when he was arrested, and (2) revolver shells found in appellant's home pursuant to a search warrant which he claims did not identify the shells. The revolvers were alleged to have been used in the armed robberies and the shells matched the revolvers.

With respect to the revolvers found in the vehicle, the district court held that a warrant was not required because the search was made incident to a lawful arrest. While admittedly the search of the vehicle was not made at the same moment as the arrest, a thorough search was not then possible because of darkness, and the automobile was searched and the revolvers found when the vehicle was taken to a police station a short time later.

As the District Attorney points out in his brief, appellant's reliance on Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), is misplaced. In *Preston*, an arrest was made for vagrancy and the defendant's car was towed to a garage and some time later

18. H.T. p. 7. Appellant remained silent in face of this comment.

19. In Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), it was said that:

A choice made by counsel not participated in by the petitioner does not automatically bar relief.

On the question of waiver in post-conviction proceedings, Smith v. Yeager, 393 U.S. 122, 89 S.Ct. 277, 21 L.Ed.2d 246 (1968), and United States ex rel. McCann v. Adams, 320 U.S. 220, 64 S.Ct.

14, 88 L.Ed. 4 (1943), suggest a disposition not to find waiver in circumstances such as these. The general problem of waiver is reviewed in Comment, *Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest,* 54 Cal.L.Rev. 1262 (1966), and in an informative article by Judge Donald P. Lay, *Problems of Federal Habeas Corpus Involving State Prisoners,* 45 F.R.D. 45, 55 (1968).

20. 281 F.Supp. at 99–100.

searched without a warrant, producing evidence which led to conviction for conspiracy to rob a bank. The search was held invalid both because of the lag of time following the arrest and because there was no direct relationship between the vagrancy charged and the evidence secured.

In upholding the search here, the district court properly relied on United States v. Dento, 382 F.2d 361 (3d Cir.), cert. denied, 389 U.S. 944, 88 S.Ct. 307, 19 L.Ed.2d 299 (1967), in which we distinguished Preston in an arrest on a highway where the defendant's vehicle was driven to the State Police barracks some distance away to be searched. For reasons of safety the search was not conducted along the highway where the arrest was made. As in this case, there was a "reasonable nexus" in Dento, 382 F.2d at 366, between the offense for which the arrest was made and the search of the vehicle, a nexus absent in Preston.[21]

Thus, the failure to file a pre-trial motion to suppress the evidence as to the revolvers was not prejudicial because, on the merits, it would undoubtedly have been decided against appellant. More importantly, the lower state court and the district court did examine this particular issue on the merits and concluded the evidence was admissible.

The matter of the revolver shells found in appellant's home is more difficult. A warrant had been issued to search appel-

lant's home. The warrant was lost and could not be produced at the habeas corpus proceedings in the state and federal courts. Appellant contends that the shells should not have been admitted into evidence because they were not described in the search warrant. The likelihood that the search warrant did not specify the shells is supported by the trial testimony of the police officer making the search.[22]

Complicating the picture was the fact that an objection to the admission of the bullets had been sustained in the first trial which ended in a mistrial. Defense counsel in the second trial did object to the admission of the shells on the grounds of irrelevancy and a defective search warrant but his objections were overruled. The district court's opinion indicates that appellant's counsel at the second trial did not know "of any possible impropriety in the manner in which the bullets were seized until the time when they were offered." [23] Even if counsel had known about this earlier, the district court observed, he may still have failed to file a pre-trial suppression motion as he may have been "misled by the exclusion of the bullets at the prior trial into believing that upon objection they likewise would be excluded at the second trial." [24]

Judge Graff, in the state habeas corpus proceeding, rejected the attack on the admission of the shells on the ground that the failure to file a pre-trial suppression motion was prejudicial to the Commonwealth and the matter could not be raised

---

21. See, also, United States ex rel. Foose v. Rundle, 389 F.2d 54 (3d Cir.) cert. denied, 392 U.S. 914, 88 S.Ct. 2075, 20 L.Ed.2d 1372 (1968).

The instant case is also to be distinguished from Dyke v. Taylor Implement Mfg. Co., Inc., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), in which the Supreme Court held invalid a warrantless search of an automobile where the arrest was made for reckless driving and the rifle found in the search was used to support a conviction for criminal contempt for the violation of an injunction in a labor dispute. After the defendants were arrested in a car on a highway and placed in jail, the

police searched their car which had been parked outside the jailhouse by the police. The Court did not reach the question of "remoteness" because of absence of probable cause for the warrantless search as incident to the arrest. Unlike Dyke, the search here was directly related to a quest for instrumentalities and fruits of the offense for which appellant was arrested and, as in Dento, there was a valid reason for the short delay in making the search of the vehicle after the arrest.

22. 281 F.Supp. at 98, n. 4.

23. Id. at 98.

24. Id.

at the trial.[25] He also said it "[i]s permissible to seize things other than those described in the search warrant if they have a reasonable relation to the purpose of the search."[26]

▊ The district court held that even if the search warrant is assumed to have been defective, and the revolver shells improperly admitted, this did not entitle appellant to relief because the error was harmless, relying on Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The court recognized the *Chapman* test that "before a constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt," and then proceeded to detail the substantial evidence, particularly the testimony of identity witnesses, including the victims of the robberies, supporting the convictions.[27] We agree with the lower court in the application of the harmless error rule in this factual context.[28] Even apart

---

25. The state court also believed it was improper to raise the issue of search and seizure on habeas corpus because no direct appeal had been taken. On this point, see Lay, *supra* note 19, 45 F.R.D. at 55.

26. The court was quoting from Commonwealth ex rel. Stoner v. Myers, 199 Pa. Super. 341, 345, 185 A.2d 806, 808 (1962), allocatur denied, which in turn quoted United States v. Joseph, 174 F. Supp. 539, 545 (E.D.Pa.1959), *aff'd per curiam*, 278 F.2d 504 (3d Cir.), *cert. denied*, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed. 2d 52 (1960). See also, United States ex rel. Stoner v. Myers, 329 F.2d 280 (3d Cir. 1964), dealing with the same issues as the Pennsylvania *Stoner* case, supra, and United States v. One 1965 Buick, 392 F.2d 672, 679 (6th Cir. 1968).

   Recently, we disposed *per curiam* of a similar contention with respect to the validity of a search warrant which did not mention the particular items seized where they were related to the offense charged. United States ex rel. Banker v. Maroney, 391 F.2d 926 (3d Cir. 1968). (The facts of the case and the constitutional issues involved are discussed in the opinion of the lower state court in a post-conviction hearing proceeding, *aff'd per curiam*, Commonwealth ex rel. Banker v. Maroney, 210 Pa.Super. 702, 231 A.2d 323 (1967), allocatur denied.)

   Gurleski v. United States, 405 F.2d 253 (5th Cir. 1968), holds that under Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), which abolished the "mere evidence" rule, objects seized during a search are admissible, even though not described in the search warrant, if they are reasonably related to the offense committed, whether or not they are in fact fruits or instrumentalities of a crime.

27. 281 F.Supp. at 98–100.

28. For a good discussion of the application of the harmless error rule in a variety of constitutional issues, see the opinions by Justice Roberts in Commonwealth ex rel. Firmstone v. Myers, 431 Pa. 628, 246 A.2d 371 (1968), and Commonwealth v. Padgett, 428 Pa. 229, 237 A.2d 209 (1968).

   The harmless error rule has been applied in Fourth Amendment cases: Thompson v. United States, 382 F.2d 390 (9th Cir. 1967); Ethington v. United States, 379 F.2d 965 (6th Cir. 1967); United States v. Ramseur, 378 F.2d 902 (6th Cir. 1967); Young, v. Boles, 270 F. Supp. 847 (N.D.W.Va.1967); Commonwealth v. Pearson, 427 Pa. 45, 233 A.2d 552 (1967).

   In *Pearson* it was determined that the error was not harmless; in the other cases it was decided that it was.

   In *Ramseur*, a green jacket proved to be the defendant's undoing. A number of witnesses identified him from this distinctive feature so that the admission of the jacket itself, which was the product of an illegal search, was harmless. In the instant case, it was appellant's green sweater that caught the eye of a number of witnesses who identified him. We agree with *Ramseur* that,

   Even if this search was illegal, the case would simply be a classic instance of harmless error. 378 F.2d at 903.

   The foregoing line of cases is questioned by Judge Lay in Pope v. Swenson, 395 F.2d 321, 324, n. 2 (8th Cir. 1968):

   These courts have so ruled without discussion of the concept that the constitutional rule excluding evidence illegally seized, is not only related to the regulation of a fair trial, but is also meant as a deterrent to illegal law enforcement. * * * The Supreme Court has yet to specifically pass on this question. * * * We need not decide this troublesome issue here.

   In Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), the Supreme Court held the illegal admission of certain evidence not to be harm-

from the harmless error principle, however, we believe the revolver shells were admissible in accordance with the authorities cited in note 26 in the margin.

From a careful examination of the record and of the opinions of the lower courts which have reviewed this case, we are convinced that there is "adequate affirmative proof" to rebut the prima facie presumption of prejudice from the belated appointment of counsel.[29]

In view of this conclusion, there is no reason to remand the petition for an evidentiary hearing as appellant urges us to do under Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). There are no factual disputes which require resolution by a plenary hearing as in *Townsend*.

■ The district court had before it the transcript of the state court trial and the transcript of the state habeas corpus proceeding. We have recognized that the appointment of defense counsel here was belated, and we have analyzed the elements of harm asserted by appellent in the admission of the contested evidence. Inadmissibility was claimed on constitutional grounds which have been dealt with on the merits by the district court to our satisfaction. This is not a case where belated appointment of counsel may have resulted in the failure to call witnesses whose availability the defendant did not have a chance to disclose to his counsel or where there was insufficient time to call them,[30] or in the failure to raise defenses of which counsel was unaware or which he was unprepared to pursue,[31] or in an improvident plea of guilty.[32] At most, counsel failed to file

less error because of its damaging nature; the Court did not discuss the applicability of the *Chapman* rule to Fourth Amendment situations generally.

In a recent decision of this court we declined to decide whether the harmless error rule applies in a *Massiah* (Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)) type case where we did find the error to be harmful: United States ex rel. O'Connor v. New Jersey, 405 F.2d 632, 638, n. 22 (3d Cir. 1969).

In Application of Reynolds, 397 F.2d 131, 135 (3d Cir. 1968), we held to be harmless error the rebuttal testimony of a psychiatrist who recounted the version of the crime defendants had related to him without having been warned of their constitutional rights.

29. Judge Marsh's reliance in the opinion below on his prior decision in United States ex rel. Peterson v. Russell, 266 F.Supp. 93 (W.D.Pa.1967), note 4 supra, in which he disposed of a belated appointment claim on review of the entire record in the case, may indicate that the district court in effect used the test we have applied here, even though it did not articulate the subsequent *Mathis* burden of proof rule.

30. Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967); Townsend v. Bomar, 351 F.2d 499 (6th Cir. 1965); McKenna v. Ellis, 280 F.2d 592 (5th Cir. 1960); United States ex rel. Williams v. Brierley, 291

F.Supp. 912 (E.D.Pa.1968); Harris v. Peyton, 285 F.Supp. 107 (W.D.Va.1968).

In Paoni v. United States, 281 F. 801 (3d Cir. 1922), this court granted a new trial where due to late mailing of notice of trial retained counsel had insufficient time to secure the attendance of witnesses by subpoena. *Cf.* United States ex rel. Spears v. Rundle, note 7 *supra*, where the trial was continued to allow defendant time to secure alleged alibi witnesses.

31. On failure of counsel to look into, or to have sufficient time to look into, defendant's medical condition for possible defense of insanity, see Brooks v. Texas, 381 F.2d 619 (5th Cir. 1967); Hintz v. Beto, 379 F.2d 937 (1967); and Goodwin v. Swenson, 287 F.Supp. 166 (W.D. Mo.1968). In Coles v. Peyton, 389 F.2d 224 (4th Cir.), cert. denied 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968), the unexplored defense was the want of chastity of the alleged victim of a forcible rape. In Martin v. Virginia, 365 F.2d 549 (4th Cir. 1966), a change of venue may have been indicated if counsel had had time to evaluate the strong community feeling over the case. Shapiro v. United States, 69 F.Supp. 205, 107 Ct.Cl. 650 (1947), dealt generally with lack of time to prepare an adequate defense in a military court martial in which the Sixth Amendment was applied.

32. Calloway v. Powell, 393 F.2d 886 (5th Cir. 1968); Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967); United States ex

**1196**

pre-trial suppression motions with respect to certain evidence secured by police searches. Since the district court did not refuse to consider the challenge to the evidence on the merits and dealt with the constitutional infirmities that were raised,[33] the sum and substance of the case is that appellant was not prejudiced by the late appointment of counsel.

We have dwelled at some length on the principal issue in this case because this is one of the first appeals to raise directly the charge of belated appointment of counsel since *Mathis*.[34] The claim of ineffective counsel due to tardy appointment is a serious constitutional challenge which may not be lightly dismissed. We reaffirm the position taken in *Mathis*, and we reiterate the words of Judge Weiner in concluding the opinion:

> The hopeful practical consequence of our rule thus enunciated will be that the states and their judicial systems in the Third Circuit will become more careful in permitting appointed counsel to fulfill in a realistic manner the function which they should have been responsibly assuring all along. 394 F. 2d at 753–754.

The denial of the writ of habeas corpus by the district court will be affirmed.

rel. Kimbrough v. Rundle, 293 F.Supp. 839 (E.D.Pa.1968) ; Jones v. Peyton, 228 F.Supp. 129 (W.D.Va.1968) ; Bentley v. Florida, 285 F.Supp. 494 (S.D.Fla.1968).

33. The lower state court had suggested the failure to file pre-trial suppression motions as a possible ground for denial of habeas corpus, but that court also considered the merits of the constitutional challenges.

34. The *Mathis* rule has been applied in a number of district court cases: United States ex rel. Huntt v. Russell, 285 F. Supp. 765 (E.D.Pa.1968) ; aff'd per curiam, 406 F.2d 774 (3d Cir. 1969) ; United States ex rel. Williams v. Brierley, 291 F.Supp. 912 (E.D.Pa.1968) ; United States ex rel. Kimbrough v. Rundle, 293 F.Supp. 839 (E.D.Pa.1968) ; United States ex rel. Lawson v. Hendrick, 293 F.Supp. 1403 (E.D.Pa.1968) ; United States ex rel. Washington v. Maroney, 294 F.Supp. 1402 (W.D.Pa.1968),

*appeal pending.* See also United States ex rel. Spears v. Rundle. note 7 supra.

In *Williams*, the writ was granted because, inter alia, the "short interval between his [counsel's] appointment and the trial made it impossible for him to speak with the defendant's alibi witnesses who were not in court and indeed whom the defendant himself had no opportunity to subpoena for trial." Also, there were pre-trial suppression motions which might have been helpful to the petitioner. In *Kimbrough*, counsel was appointed on the day of the trial, perhaps even after the trial had commenced, and, evidently on the advice of counsel, petitioner entered a guilty plea. In *Lawson* and in *Washington*, the district court concluded from the evidentiary hearing which it held that the Commonwealth had met the burden of disproving the presumption of prejudice from the claimed belated appointment of counsel.